# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| ProAir Intermediate Holdco, LLC,[1] | ) | Case No. 22-11195 (LSS) |
| Debtor | ) | |
| | ) | |
| In re: | ) | Chapter 7 |
| ProAir, LLC, | ) | Case No. 22-11196 (LSS) |
| Debtor | ) | |
| | ) | |
| In re: | ) | Chapter 7 |
| American Cooling Technology, LLC, | ) | Case No. 22-11197 (LSS) |
| Debtor | ) | |
| | ) | |
| In re: | ) | Chapter 7 |
| Bus Air, LLC, | ) | Case No. 22-11198 (LSS) |
| Debtor | ) | |
| | ) | |
| In re: | ) | Chapter 7 |
| Evans Tempcon Delaware, LLC, | ) | Case No. 22-11199 (LSS) |
| Debtor | ) | **Hearing Date: TO BE DETERMINED** |
| | ) | **Objection Deadline: TO BE DETERMINED** |

## MOTION OF BERKSHIRE BANK
## FOR RELIEF FROM THE AUTOMATIC STAY

Berkshire Bank, a Massachusetts banking corporation ("<u>Berkshire</u>"), by and through its

undersigned counsel, hereby moves this Court (the "<u>Motion</u>") for entry of an Order granting

relief from the automatic stay pursuant to section 362(d) of title 11 of the United States Code

(the "<u>Bankruptcy Code</u>") to allow it to exercise its remedies and enforce its rights against

---

[1] The Debtors in the above captioned Chapter 7 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: ProAir Intermediate Holdco, LLC (3331), ProAir, LLC (8392), American Cooling Technology, LLC (7742), Bus Air, LLC (8627) and Evans Tempcon Delaware, LLC (8229). The Debtors' principal place of business is 2900 County Road 6 West, Elkhart, IN 46514.

collateral in connection with the Debtors' default of certain secured loan obligations owed to Berkshire. In support of its Motion, Berkshire states as follows:

## Jurisdiction And Venue

1.    The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, and this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.    On November 16, 2022 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 7 of the Bankruptcy Code, commencing the above-captioned chapter 7 cases.

3.    Prior to the Petition Date, the Debtors were engaged in the manufacturing of High Volume Air Conditioning (HVAC) units for specialized vehicles such as ambulances, school buses, and the like.

4.    Additional detail regarding the Loan Documents, the events leading to commencement of these chapter 7 cases, and the value of the Bank Priority Collateral[2] is set forth in the *Declaration of James P. Fox in Support of the Motion of Berkshire Bank for Relief from the Automatic Stay* (the "Fox Declaration"), filed with this Motion and incorporated herein in its entirety by reference.

## RELIEF REQUESTED

5.    Pursuant to section 362(d) of the Bankruptcy Code, Berkshire respectfully requests entry of an order modifying the automatic stay to permit Berkshire to exercise any and all rights it may have under the Loan Documents and applicable non-bankruptcy law, including,

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Fox Declaration.

but not limited to, taking possession and disposing of the Bank Priority Collateral.

### BERKSHIRE IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

6.    Section 362(d) of the Bankruptcy Code provides, in relevant part, that:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest:
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> >
> > > (A)    the debtor does not have an equity in such property; and
> > >
> > > (B)    such property is not necessary for an effective reorganization....

7.    In the present case, Berkshire is most clearly entitled to the relief requested herein pursuant to § 362(d)(2) insofar as (A) the Debtors have no equity in the Bank Priority Collateral, and (B) the Bank Priority Collateral is not necessary for an effective reorganization.

8.    The Debtors have each filed for Chapter 7 liquidation. Accordingly, the Bank Priority Collateral cannot possibly be necessary for an effective reorganization within the meaning of § 362(d)(2)(B) because, there is - both by definition and by the Debtors' admission - no prospect of reorganization. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates Ltd.*, 484 U.S. 365, 375 (1988).

9.    As set forth in greater detail in the Fox Declaration, as of the Petition Date, the balance of the Debtors' Obligations to Berkshire was $8,517,667.85 (the "Berkshire Claim"). Fox Declaration at ¶ 7. The Berkshire Claim is secured by a first position security interest in the Bank Priority Collateral – i.e. Debtors' Accounts and Inventory.

10.     Prior to the Petition Date, the Debtors were engaged in the highly specialized niche industry of manufacturing HVAC systems for specialized vehicles. As a result, the vast majority of the inventory is not widely marketable and, according to the Saperstein Appraisal, worth somewhere between $891,334.40 and $1,782,668.79 (i.e. 5-10% of cost value).[3] These appraised values are the gross recovery only, without any accounting for liquidation costs or auctioneer fees, which the Saperstein Appraisal estimates would further reduce the net value recovery to 2-7%[4] of the cost value.

11.     Due to the precipitous drop in inventory value following the sudden cessation of the Debtors' operations, even if Berkshire obtained a full recovery on the Accounts (which is not a realistic assumption), Berkshire' $8,517,667.85 claim against the Debtors would remain woefully undersecured, with a deficiency of between $2.6 and $4.7 million dollars:

|  | Accounts | Inventory | Total | Berkshire Deficiency |
|---|---|---|---|---|
| **Fair Market Value** | $4,105,735.47 | $1,782,668.79 | $5,888,404.26 | $2,629,263.59 |
| **Forced Liquidation Value** | $2,874,014.83 | $891,334.40 | $3,675,349.22 | $4,842,318.63 |

12.     On its own, the Berkshire Claim is large enough to establish that the Debtors are entirely without equity in the Bank Priority Collateral. However, "[t]he classic test for determining equity under section 362(d)(2) focuses on a comparison between the total liens against the property and the property's current value." *Nantucket Inv'rs II v. Cal. Fed. Bank* (*In re Indian Palms Assocs.*), 61 F.3d 197, 206 (3d Cir. 1995) (citing *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984)).

---

[3] According to the Saperstein Appraisal, when the Debtors' inventory was in the hands of the Debtors operating as a going concern, the value of such inventory would likely have been in the range of 75-80% of cost value.

[4] The appraised estimate of the net recovery from inventory is consistent with the 4% assumed in the Debtors' wind-down cash flow scenario. *See* Ex. F to Fox Declaration, at pg 7.

13.    When the Term Agent's $5.6 million dollar claim (secured by a second priority lien on the Bank Priority Collateral and a first-priority lien on the Term Priority Collateral) is included in the analysis, the total secured claims against the Bank Priority Collateral vastly exceed the value of the property under any imaginable circumstance:

| | Estimated FMV | Estimated FLV |
|---|---|---|
| Accounts | $4,105,735.47 | $2,874,014.83 |
| Inventory | $1,782,668.79 | $891,334.40 |
| Machinery and Equipment[5] | $2,000,000.00 | $1,000,000.00 |
| Leaseholds and General Intangibles | $0 | $0 |
| **Subtotal Collateral Value** | $7,888,404.26 | $4,765,349.23 |
| | | |
| Berkshire Obligations | $8,517,667.85 | $8,517,667.85 |
| Term Agent Estimated Claim[6] | $5,600,000.00 | $5,600,000.00 |
| Total Secured Claims | $14,117,667.85 | $14,117,667.85 |
| | | |
| **Total Deficiency** | **$6,229,263.59** | **$9,352,318.62** |

Accordingly, there is no equity in the Bank Priority Collateral which could benefit the Debtors' chapter 7 estates, and Berkshire is entitled to relief from the automatic stay pursuant to § 362(d)(2).

12.    Berkshire is likewise entitled to relief from the automatic stay for "cause" pursuant to Section 362(d)(1). Although the Bankruptcy Code does not exhaustively define "cause", § 362(d)(1) does provide that "cause" includes "the lack of adequate protection of an interest in property of such party in interest." As discussed above, the value of Berkshire's claim is significantly less than the value of the property securing its claim. As an undersecured

---

[5] The Debtors estimated the value of their Machinery and Equipment at $1,000,000.00 in their "wind-down" cash flow scenario. *See* Ex. F to Fox Declaration, at pg 7.

[6] The Term Agent Estimated Claim is based on the definition of "Maximum Term Amount" provided in the Intercreditor Agreement. *See* Ex. D at pg 5.

creditor, Berkshire is entitled to adequate protection against the further diminution of the value of its collateral. *See In re Branden Assocs.*, 128 B.R. 729 (Bankr. W.D. Va. 1991).

17.     Here, absent some showing or additional relief approved by the Court, Berkshire's claim is not adequately protected. The continued imposition of the automatic stay is eroding the collectability of the Debtors Accounts and diminishing Berkshire's ability to engage the Debtors' former employees to finish the work-in-process before customers move on to new suppliers who can fulfill their orders. The Debtors' Accounts (a quarter of which were not eligible collateral under the Loan Agreement) are rapidly diminishing in value, not only due to the passage of time, but also due to the ripple effects of the Debtors' filings have had and are continuing to have on their former customers. Many of the Debtors former customers informed Berkshire prior to the Petition Date that their Accounts may be subject to significant setoffs due to damages caused by the Debtors' failure to deliver product. Former customers have reportedly been forced to furlough their employees and push back production dates as a result of the supply chain vacuum created by the Debtors' sudden cessation of operations. Should relief from the automatic stay be granted, Berkshire stands ready to collect Accounts and has license under the Loan Documents to enter the Debtors' facility as necessary to complete work-in-progress, minimize customer offsets, and maximize value.

18.     "Cause" also exists in the present case under the equitable balancing tests usually employed by courts. "The factors courts generally use in determining whether cause exists are: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the automatic stay; (2) whether the hardship to the non-bankrupt party by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and (3) the probability

of the creditor prevailing on the merits." *In re Samson Res. Corp.*, 559 B.R. 360, 370 (Bankr. D. Del. 2016)."

19.    There is no prejudice to the Debtors' estates in the present case because, as discussed above, the Debtors' estates have no equity in the Bank Priority Collateral. If anything, the Debtors' estates would benefit from the modification of the stay requested herein as it would allow the estates to abandon the Debtors' leaseholds and avoid the administrative expense cost associated with the estates' continued possession. Finally, Berkshire's rights under non-bankruptcy law are crystal clear – there have been multiple uncontested defaults and Berkshire is entitled to enforce its Loan Agreement.

20.    For the reasons outlined above, Berkshire respectfully asserts that "cause" exists for it to be granted relief from the automatic stay to exercise any and all rights it may have under the Loan Documents, including, but not limited to, obtaining possession and disposing of the Bank Priority Collateral.

21.    Alternatively, if the Court is not inclined to grant stay relief at this time, Berkshire respectfully requests that the Court compel the Debtors' estates to provide Berkshire with adequate protection during these cases, including but not limited to the unfettered right to access and inspect the Bank Priority Collateral, provide proof of insurance coverage to protect the Bank Priority Collateral, make interest payments due under the Loan Agreement, the Note and the other Loan Documents, reimburse Berkshire for attorneys' fees and costs, and grant for such other and further relief as this Court deems just and proper.

### NOTICE

22.    Notice of this Motion has been provided to: (a) the United States Trustee; (b) the chapter 7 trustee; (c) counsel to the Term Agent; and (d) parties entitled to receive notice under

Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, Berkshire submits that no further notice is necessary.

<u>**NO PRIOR REQUEST**</u>

23.     No prior request for the relief sought in this Motion has been made to this or any other court.

<u>**RESERVATION OF RIGHTS**</u>

24.     Nothing herein shall be deemed a waiver of or otherwise prejudice any of Berkshire's claims and rights, whether legal or equitable, including but not limited to its right to assert claim(s) for any additional amounts due and owing from the Debtor.

WHEREFORE, Berkshire respectfully requests entry of an order: (i) modifying the automatic stay "for cause" to permit Berkshire to exercise any and all rights it may have under the Loan Agreement, the Note and the other Loan Documents, including, but not limited to, obtaining possession and disposing of the Bank Priority Collateral; and (b) granting Berkshire adequate protection; and (c) such other relief as the Court deems just and proper.

Dated: November 23, 2022          **CROSS & SIMON, LLC**
      Wilmington, Delaware

                                           */s/ Kevin S. Mann*
                                           Kevin S. Mann (No. 4576)
                                           1105 North Market Street, Suite 901
                                           Wilmington, Delaware 19801
                                           (302) 777-4200
                                           kmann@crosslaw.com

                                               -and-

James C. Fox (MA BBO# 548664)
Rion M. Vaughan (MA BBO# 689153)
**RUBERTO, ISRAEL & WEINER, P.C.**
255 State Street, 7th Floor
Boston, Massachusetts 02109
(617) 742-4200
jcf@riw.com
rmv@riw.com

*Counsel for Berkshire Bank*